1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RAFAEL CRUZETA, an individual, | ) | Case No. 12-CV-1430-L(BLM) |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND AS TO THE FEDERAL CLAIMS [doc #29.]** |
| v. | ) | |
| SONY ELECTRONICS, INC., a Delaware Corporation, and DOES 1 through 50, inclusive | ) | |
| Defendants. | ) | |

Pending before the Court is Defendant's motion to dismiss Plaintiff's Second Amended Complaint ("SAC") for failure to state a claim and for lack of subject matter jurisdiction. The motion is fully briefed and is decided on the papers submitted and without oral argument in accordance with Civil Local Rule 7.1(d.1). For the following reasons, the Court **GRANTS** Defendant's motion.

## I.    BACKGROUND

Plaintiff Rafael Cruzeta ("Cruzeta") is a "resident of the State of California, County of San Diego." (SAC ¶ 5.) Cruzeta was employed by the Defendant, Sony Electronics, Inc. ("Sony") for 30 years. (*Id.*) Sony is a "corporation duly organized and existing under and by virtue of the laws of the State of California with its principal place of business in San Diego, CA." (*Id.* ¶ 6.) It is also the trustee of a retirement plan that provides Cruzeta and his fellow

1    employees with various benefits. (*Id.* ¶ 7.)

2        Cruzeta alleges that his "inclusion as a qualified participant within Sony's Standard

3    Retirement Plan" ("SRP") was motivated by his continued employment at Sony. (SAC ¶ 13.)

4    Further, Plaintiff alleges the SRP contains a severance provision that grants fired employees

5    two-weeks pay for every year of employment. (*Id.* ¶ 15.) Therefore, Plaintiff contends he is

6    entitled to 60 weeks of severance pay, a total of at least $50,000. (*Id.* ¶ 40.) In addition, Sony

7    contributed approximately $10,000 a year into Cruzeta's pension fund which he should receive.

8    (*Id.* ¶ 17.) Finally, "in accordance with a standard formula," Sony provided matching funds

9    totaling $2,800 per year into Cruzeta's 401K retirement plan. (*Id.* ¶¶ 37, 38.) Plaintiff alleges

10   these benefits were set to increase after Cruzeta had been employed with Sony for 30 years, and

11   he was fired on November 9, 2010, "one single day short of his thirtieth anniversary with the

12   company, thus depriving him of additional retirement and pension benefits." (*Id.* at ¶ 42)

13   However, the termination of employment letter expressly states November 10, 2010 was

14   Cruzeta's last day of employment. (SAC, Ex. A.)

15       According to Cruzeta, Sony "trumped up a termination at the earliest practical

16   opportunity in violation of ERISA [Employee Retirement Income Security Act] restrictions and

17   solely as a measure to save costs." (SAC ¶ 46.) Sony further undertook a "covert 'investigation'"

18   to determine the nature of his friendly encounters with female employees at Sony. (*Id.* ¶ 25.) The

19   findings of this investigation led Defendant to conclude Cruzeta had engaged in an act of sexual

20   harassment.[1] (*Id.* ¶ 26.) Cruzeta alleges that he "never committed actions which constitute sexual

21   harassment and he certainly had no reason to believe that women were making allegations of

22   sexual harassment against him." (SAC ¶ 34.) The investigation permitted Sony to terminate

23   Cruzeta's employment and vested pension rights. (*Id.* ¶ 29.)

24       The Senior Manager of Human Resources at Sony requested Cruzeta appear for an exit

25   interview as well as for the "standard termination procedures." (*Id.* ¶ 52.) Cruzeta inquired about

26

27       [1]Sony states that this resolution was reached based on confirmation through a witness, a
     pattern of behavior and action confirmed by other women contacted during the investigation, and
28   Cruzeta's "lack of full disclosure and cooperation during the interview." (SAC, Ex. A.)

12cv1430L

1   the benefits due via the Standard Retirement Plan and was told that senior management would

2   advise the Senior Manager of Human Resources of the benefits. (*Id.*) Cruzeta was then directed

3   to pack up his belongings and was escorted off the premises of Sony. (*Id.* ¶ 53.) He was advised

4   that he was not welcome on company premises and would be denied entry if he returned. (*Id.* ¶

5   54.) As a result of his termination, Cruzeta alleges he was not "paid severance nor was he able to

6   gain access to any of the listed benefits" outlined above. (*Id.* ¶ 55.)

7      In response to his termination, Cruzeta sent a letter to the President of Sony, Phil

8   Molyneaux ("Molyneaux"). (*Id.* ¶ 32.) Plaintiff requested that Defendant give him the early

9   retirement package that he had been offered in June 2009. (*Id.*, Ex. B.) Donna Kaplan

10  ("Kaplan"), on behalf of Molyneaux, sent a response to Cruzeta's letter. (*Id.*, Ex. C.) Kaplan

11  restated that, "[b]ased upon [his] prior record and continued violations of our anti-harassment

12  policies, a decision was made to terminate your employment." (*Id.*)

13     Cruzeta alleges that he filed a formal complaint on November 9, 2010, "to seek remedy

14  with the administrative complaints department within Defendants' business." (SAC ¶ 51.)

15  Throughout November and December of 2010, Cruzeta contacted Molyneaux "by telephone as

16  he had been accustomed in the past." (SAC ¶ 57.) Cruzeta alleges that none of these calls were

17  returned. (*Id.*) Cruzeta then flew to Las Vegas, Nevada on January 7, 2011, for a one-on-one

18  meeting with Molyneaux. (*Id.* ¶ 59.) He allegedly delivered "a listing of his grievances" to

19  Molyneaux and "sought continuing opportunities of serving Sony." (*Id.*) Cruzeta then placed a

20  call to Kaplan, the person to whom Molyneaux had directed him, in order to obtain severance

21  pay and retirement benefits. (*Id.* ¶ 60.) The call was not returned; instead, Plaintiff received a

22  letter from Kaplan (*Id.*, Ex. C) informing him of "the finality of the termination decision." (*Id.* ¶

23  60.)

24     Cruzeta alleges that he was told to contact Sony's toll free Human Resources hotline if he

25  wished to secure his benefits. (SAC ¶ 61.) He "called the number in February 2011, provided his

26  social security number to the representative, and then proceeded to request his severance and

27  benefits." (*Id.*) The only response Plaintiff allegedly received was that the decision would be left

28  to Sony's senior management. (*Id.*) After selecting Eric Welch ("Welch") as his legal counsel in

12cv1430L

February of 2011, Cruzeta alleges that a representative from the same hotline informed him that Sony would no longer communicate with him "as he was a 'represented party'". (*Id.* ¶ 62.) Throughout the Spring of 2011, Plaintiff's counsel proceeded to contact in-house counsel at Sony. (*Id.* ¶ 64.) Cruzeta alleges that Welch "attempted to compel administrative remedy through multiple levels of telephonic and written correspondence," but does not indicate what those attempts consisted of. (*Id.*)

In the Fall of 2011, Sony's Vice President and Associate General Counsel allegedly advised Welch that "there was no merit in Plaintiff's claims for the severance and benefits, that his claims were refused by the Company." (*Id.* ¶ 64.) Welch continued to reach out to Sony but his efforts to secure Cruzeta's severance and retirement benefits have been unsuccessful. (*Id.* ¶ 65.)

On January 4, 2014, Cruzeta filed the SAC, asserting multiple causes of action. First, by "wrongfully terminating Plaintiff *one single day short* of 30 years," Cruzeta alleges Sony violated his rights under § 502 of ERISA. (SAC ¶¶ 72, 79.) He alleges that it did so in order to avoid "paying him his full and earned retirement and pension entitlements." (*Id.* ¶ 75.) Next, Plaintiff alleges that Defendant violated 29 U.S.C. § 1140 by interfering "with plaintiffs' employment relationship and legitimate expectation of continued employment for the express purpose of depriving plaintiff of most, if not all of the substantial protected fringe benefits, severance pay and other incidents." (*Id.* ¶ 84.) Further, he alleges that Sony breached its Standard Retirement Plan and, as a result, he is entitled to severance pay totaling sixty weeks' worth of his standard salary. (*Id.* ¶¶ 94, 100.) Plaintiff also alleges that because he "reasonably relied to his detriment for approximately 30 years on the terms and conditions set forth in [Sony's] policy regarding retirement, severance, pension and other incidents of the Standard Retirement Plan[, he] incurred substantial damages." (*Id.* ¶ 110.) Finally, Cruzeta asserts that as a result of Sony's "negligence, carelessness, recklessness, and/or unlawfulness, [he] was injured in his business activities, and has sustained continuing financial damages" totaling no less than $1,000,000. (*Id.* ¶¶ 115, 117.)

On January 24, 2014, Sony moved to dismiss the SAC for failure to state a claim and for

12cv1430L

1  lack of subject matter jurisdiction. (MTD at 13-14.) In arguing that the first four causes of action

2  fail to state a claim upon which relief can be granted, Sony contends that the ERISA-based

3  causes of action do not sufficiently allege a plausible causal connection between receipt of

4  benefits under the Standard Retirement Plan and plaintiff's termination of employment.  (*Id.* at

5  5.) In addition, it asserts that Cruzeta's first four causes of actions must "be dismissed due to

6  Plaintiff's failure to exhaust his administrative remedies." (*Id.* at 13.) Finally, Sony argues that

7  the Plaintiff's state law cause of action for negligence must be dismissed on the ground that the

8  Court lacks subject matter jurisdiction over the claim. (*Id.* at 14.) Cruzeta opposes the motion

9  asserting that he "still maintains viable causes of action" and "has adequately alleged his pursuit

10 of administrative relief." (Opp'n. at 5.) Further, he argues that the Court is the "only venue

11 available for [him] to pursue his claims" due to ERISA preemption. (*Id.*)

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss for Failure to State a Claim

14        The court must dismiss a cause of action for failure to state a claim upon which relief can

15 be granted. FED. R. CIV. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal

16 sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court

17 must accept all allegations of material fact as true and construe them in light most favorable to

18 the nonmoving party. *Cedars-Sanai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d

19 972, 975 (9th Cir. 2007). Material allegations, even if doubtful in fact, are assumed to be true.

20 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the court need not "necessarily

21 assume the truth of legal conclusions merely because they are cast in the form of factual

22 allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003)

23 (internal quotation marks omitted). In fact, the court does not need to accept any legal

24 conclusions as true. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)

25        "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

26 factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

27 requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

28 of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Instead, the

12cv1430L

1    allegations in the complaint "must be enough to raise a right to relief above the speculative
2    level." *Id.* Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual
3    matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct.
4    at 1949 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff
5    pleads factual content that allows the court to draw the reasonable inference that the defendant is
6    liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability
7    requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."
8    *Id.* A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory
9    or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749
10   F.2d 530, 534 (9th Cir. 1984).

11          Generally, courts may not consider material outside the complaint when ruling on a
12   motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19
13   (9th Cir. 1990). However, documents specifically identified in the complaint whose authenticity
14   is not questioned by parties may also be considered. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1
15   (9th Cir. 1995) (superceded by statutes on other grounds). Moreover, the court may consider the
16   full text of those documents, even when the complaint quotes only selected portions. *Id.*

17          **B.     Motion to Dismiss for Lack of Subject Matter Jurisdiction**

18          Rule 12(b)(1) provides for dismissal of a complaint if the court finds it lacks subject
19   matter jurisdiction. FED. R. CIV. P. 12(b)(1). The plaintiff bears the burden of establishing that
20   subject matter jurisdiction is proper. *Kokkonen v. Guardian Life Ins., Co.*, 511 U.S. 375, 377
21   (1994). When challenging subject matter jurisdiction, a defendant can do so either facially or
22   factually. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). With a facial
23   attack, "the challenger asserts that the allegations contained in a complaint are insufficient on
24   their face to invoke federal jurisdiction," and the court assumes that all material allegations in
25   the complaint are true. *Id.*; *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005). With
26   a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would
27   otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th
28   Cir. 2004).

12cv1430L

Generally, on a 12(b)(1) motion, the court may consider "evidence regarding jurisdiction and..rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir. 1983); *see also Roberts v. Carrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005). In such cases, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment [and] need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citations omitted).

However, where "the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits," the court should either "employ the standard applicable to the motion for summary judgment," *Autery*, 424 F.3d at 956, or "assume the truth of the allegations in a complaint unless controverted by undisputed facts in the record." *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks, brackets, ellipsis and citations omitted).

## III.    DISCUSSION

### A.    Failure to State a Claim

Plaintiff contends that his SAC corrects the pleading deficiencies concerning the four ERISA-based causes of action as required by the Court's December 14, 2013 Order. In other words, Plaintiff acknowledges that ERISA preempts his state law claims insofar as they relate to an employee benefit plan. *See* 29 U.S.C. § 1144(a). Thus, in order to proceed, Plaintiff must meet the pleading standards under Rule 8 and relevant case law in order to state his ERISA claims. *See e.g., Twombly* and *Iqbal.*

Cruzeta argues that he "still maintains viable causes of action" because he has specified the pertinent ERISA provisions and addressed each required element of the claim. (Opp'n. at 5, 7.) However, Plaintiff's contention misses the mark. Sony asserts that Plaintiff's argument "concerning ERISA violations 'lacks plausibility' given the allegations of Plaintiff's misconduct," (MTD at 8.) and the absence of a factual basis for Cruezta's claim that he was

12cv1430L

1    terminated a day short of his 30 anniversary with Sony. (*Id.* at 7.) Instead, Defendant argues

2    Plaintiff's rights had vested at the time of his termination.

3           Section 510 of ERISA does not prevent an employer's discharge of an employee but

4    instead prohibits an employer from interfering with an employee's right to benefits:

5                  it shall be unlawful for any person to discharge or discriminate against a
                   participant or beneficiary for exercising any right to which she is entitled under the
6                  provisions of an employee benefit plan or for the purpose of interfering with the
                   attainment of any right to which such participant may become entitled under the
7                  plan.

8    29 U.S.C. § 1140.

9           "This section prevents an employer from arbitrarily discharging an employee whose

10   pension rights are about to vest." *Baker v. Kaiser Aluminum and Chemical Corp.*, 608 F.Supp.

11   1315, 1318 (N.D. Cal.1984); *Lojek v. Thomas*, 716 F.2d 675, 680 (9th Cir.1983).  Accordingly,

12   in order to establish a violation of § 510, Plaintiff must show that his termination was motivated

13   by a desire to prevent his attaining additional benefits and Defendant terminated him with the

14   "specific intent" to interfere with his rights under defendant's benefit plans." *Baker v. Kaiser*

15   *Aluminum and Chemical Corp.*, 608 F.Supp. 1315, 1318 (N.D. Cal. 1984).

16          As noted, Cruzeta alleges Sony terminated him in an unlawful attempt to deprive him of

17   the retirement benefits vested and secured under ERISA. (Opp'n. at 4.) But Cruzeta must allege

18   "that he was terminated prior to his 30th anniversary with Sony" and that the Defendant can "be

19   held liable for interfering with the attainment of any rights to which Plaintiff is entitled." (MTD

20   at 7.) Under U.S.C. § 1140, merely claiming that Sony elected to terminate Cruzeta with the

21   intent to deprive him of "most, if not all of the substantial ERISA protected fringe benefits,

22   severance pay and other incidents of his employment" (SAC ¶ 84.)  "in order to affect the cost

23   saving measures which the early retirement plan had sought to implement" is not enough. (SAC

24   ¶ 22.) He must allege facts that Sony's proffered reason for his termination was intended to

25   interfere with his rights under the SRP.

26          Sony has provided a legitimate reason for terminating Cruzeta. (MTD at 8.) The notice of

27   termination letter lists two written warnings for sexual harassment, six harassment complaints,

28   and four additional instances of harassing behavior as factors weighing into Defendant's

12cv1430L

1  decision to terminate Plaintiff's employment. (SAC, Ex. A.) Additionally, Cruzeta's assertion

2  that he was fired a day short of 30 years with Sony simply is not true. The notice of termination

3  lists his effective last date of employment as November 10, 2010. (SAC, Ex. A.) "At his time his

4  employment was terminated, Plaintiff already had accrued pension benefits based on 30 years of

5  employment with Sony." (MTD at 2.)

6      Defendant submits that Plaintiff's scant factual allegations do not meet the

7  *Twombly/Iqbal* plausibility standard, *i.e.,* that Plaintiff's assertion of loss of additional benefits

8  when he had already attained 30 years of service with Sony was the motivating force behind

9  Plaintiff's discharge. In other words, Defendant contends that the termination in no way

10  interfered with Plaintiff's vested pension rights. Section 510 was designed to prevent employers

11  from discharging employees in order to prevent vesting. The Court concurs.

12      Plaintiff has failed to allege facts that plausibly support his contention his termination

13  after his retirement benefits had vested was intended to deprive him of his right to benefits under

14  the SRP. "No action lies where the alleged loss of rights is a mere consequence, as opposed to a

15  motivating factor behind the termination." *Dytrt v. Mountain States Tel. & Tel. Co.*, 921 F.2d

16  889, 896 (9th Cir. 1990)(citing *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 881 (9th

17  Cir.1989). Plaintiff's termination affected his pension rights only in the incidental respect of

18  denying him the opportunity to accrue increased pension benefits that are associated with

19  continued employment.

20      Because Plaintiff has failed to "plead factual content that allows the court to draw the

21  reasonable inference that the defendant is liable for the misconduct alleged," and thereby not

22  raising a claim that is plausible on its face, Sony's motion to dismiss is **GRANTED.**

23      **B.    Failure to Exhaust Administrative Remedies**

24      Sony also argues that to "the extent Plaintiff seeks to recover benefits under §

25  1132(a)(1)(B) of ERISA, these claims must be dismissed because Plaintiff has failed to exhaust

26  the administrative remedies afforded under ERISA's claims review process." (MTD at 9.)

27  Cruzeta does not allege that he undertook a review process pursuant to Defendant's Standard

28  Retirement Plan. (*Id.* at 10.) Nevertheless, Plaintiff states that he "has adequately alleged his

12cv1430L

1   pursuit of administrative relief and the incidents of retirement of which he was deprived, [and if

2   not,] he is in a position to provide more definition if required." (Opp'n. at 5.)

3        The claims procedure under § 503 of ERISA states that, "[i]n accordance with regulations

4   of the Secretary, every employee benefit plan shall afford a reasonable opportunity to any

5   participant whose claim for benefits has been denied for a full and fair review by the appropriate

6   named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). In lieu of this express

7   delegation of authority, the Department of Labor "requires employee benefit plans to provide

8   reasonable steps for handling claims for benefits filed by participants." 29 C.F.R. § 2560. The

9   review procedure for denied claims under this federal regulation require the claimant to

10  "[r]equest a review upon written application; "[r]eview pertinent documents" and "[s]ubmit

11  issues and comments in writing." 29 C.F.R. § 2560.503-1(g). A new claims regulation adopted

12  by the Secretary in 2000, further provides that claimants be provided 60 days to appeal a denied

13  claim, allow them to provide the necessary documentation relating to the claim for benefits, and

14  "reasonable access to, and copies of, all documents, records, and other information relevant to

15  the claimant's claim for benefits" in addition to a full review of such documents. 65 C.F.R. §

16  2560.503-1(h)(2)(i-iv).

17       The exhaustion of administrative remedies requirement under both regulations exists so

18  "that prior fully considered actions by pension plan trustees interpreting their plans and perhaps

19  also further refining and defining the problem in given cases, may well assist the courts when

20  they are called upon to resolve the controversies." *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir.

21  1980). Furthermore, federal courts have been granted the authority to enforce the exhaustion

22  requirement under ERISA. *Id.* In this instance, Cruzeta fails to allege he exhausted his

23  administrative remedies under Sony's review process. The Court agrees with Sony that it should

24  not accept "Plaintiff's assertion that he has exhausted his administrative remedies without

25  [alleging] more specific facts supporting this legal conclusion." (MTD at 10.) Plaintiff neither

26  alleges the inadequacy of Sony's administrative remedies nor that it is futile for him to pursue

27  his claims administratively. *Amato*, 618F.2d at 569. As a result, Cruzeta does not adequately

28  plead the alleged exhaustion of administrative remedies referenced in ¶¶ 51-65 of the Second

12cv1430L

1  Amended Complaint and Sony's motion to dismiss on this basis is **GRANTED**.

2       **C.    Leave to Amend**

3       Cruzeta argues that "[s]hould this Court find some technical defect in the pleadings, then

4  [he] should be allowed to file a third amended complaint." (Opp'n. at 8.)

5       Rule 15(a) of the Federal Rules of Civil Procedure provides that after a responsive

6  pleading has been served, a party may amend its complaint only with the opposing party's

7  written consent or the court's leave. FED. R. CIV. P. 15(a). "The court should freely give leave

8  when justice so requires," and apply this policy with "extreme liberality." *Id.*; *DCD Programs,*

9  *Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). However, leave to amend is not to be

10 granted automatically. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002)

11 (citing *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990)). Granting leave to

12 amend rests in the sound discretion of the district court. *Pisciotta v. Teledyne Indus., Inc.*, 91

13 F.3d 1326, 1331 (9th Cir. 1996).

14      The Court considers five factors in assessing a motion for leave to amend: (1) bad faith,

15 (2) undue delay, (3) prejudice to the opposing party, (4) futility of the amendment, and (5)

16 whether the plaintiff has previously amended the complaint. *Johnson v. Buckley*, 356 F.3d 1067,

17 1077 (9th Cir. 2004); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). The party opposing

18 amendment bears the burden of showing any of the factors above. *See DCD Programs*, 833 F.2d

19 at 186. Of these factors, prejudice to the opposing party carries the greatest weight. *Eminence*

20 *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). However, absent prejudice, a

21 strong showing of the other factors may support denying leave to amend. *See id.*

22      "Futility of amendment can, by itself, justify the denial of a motion for leave to amend."

23 *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Futility is a measure of the amendment's

24 legal sufficiency. "[A] proposed amendment is futile only if no set of facts can be proved under

25 the amendment . . . that would constitute a valid and sufficient claim or defense." *Miller v.*

26 *Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Thus, the test of futility is identical to the

27 one applied when considering challenges under Rule 12(b)(6) for failure to state a claim upon

28 which relief may be granted. *Baker v. Pac. Far E. Lines, Inc.*, 451 F. Supp. 84, 89 (N.D. Cal.

12cv1430L

1978); *see Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) ("A district court does not err in denying leave to amend . . . where the amended complaint would be subject to dismissal." (citation omitted)).

Cruzeta has already been granted two prior opportunities to sufficiently and properly allege all causes of action against Sony but he has failed to cure the deficiencies. If as Plaintiff states, "a wealth of information is available to substantiate each and every claim," then it should have been provided. (Opp'n. at 9.) Granting Plaintiff a third opportunity to file an amended complaint would be futile. Similarly, plaintiff's failure to adequately allege exhaustion of administrative remedies would cause undue delay in this proceeding if further opportunities for amendment were provided. Finally, Plaintiff's continuing reliance on a factually inaccurate date for his termination suggests bad faith.

Accordingly, the Court declines to exercise its discretion to allow Plaintiff to amend the complaint once more and Cruzeta's request for leave to amend the complaint is **DENIED**.

### D.    Subject-Matter Jurisdiction

Finally, Sony argues that Plaintiff's fifth cause of action for negligence should also be dismissed for lack of federal question jurisdiction. Plaintiff asserts that the "Court may exercise supplemental jurisdiction over remaining state law claims" and that he "has done all possible to remedy the ERISA deficiencies in order to allow this Court to maintain supplemental jurisdiction" over this cause of action. (Opp'n. at 8.)

"The power of federal courts to hear and decide cases is defined by Article III of the Constitution and by the federal statutes enacted thereunder." *Karcher v. May*, 484 U.S. 72, 77 (1987). They are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Having dismissed Plaintiff's federal claims, the Court must determine whether to exercise supplemental jurisdiction over plaintiff's state law claim. Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." When deciding whether to continue exercising supplemental jurisdiction, a district court should be guided by consideration of a balance of the factors of "'judicial economy, convenience, fairness, and comity.'" *Oliver v.*

12cv1430L

1   *Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th Cir. 2011) (quoting *Carnegie–Mellon Univ. v.*

2   *Cohill*, 484 U.S. 343, 350 & n.7 (1988) ("[W]hen the federal-law claims have dropped out of the

3   lawsuit in its early stages and only state-law claims remain, the federal court should decline the

4   exercise of jurisdiction by dismissing the case without prejudice.").

5        In this case, Cruzeta fifth cause of action for negligence, recklessness, careless, and/or

6   unlawfulness is based entirely on California state law. For the reasons discussed above, the four

7   federal causes of action are dismissed. Because the federal causes of action which support

8   subject matter jurisdiction are no longer pending, the Court declines to exercise supplemental

9   jurisdiction over Plaintiff's state law negligence claim.

10 **IV.   CONCLUSION AND ORDER**

11        In light of the foregoing, the Court **GRANTS** Defendant's motion to dismiss **WITH**

12 **PREJUDICE** as to the federal claims and **GRANTS WITHOUT PREJUDICE** the motion to

13 dismiss Plaintiff's negligence cause of action.  The Clerk of the Court is directed to close this

14 case.

15       **IT IS SO ORDERED.**

16 DATED: August 7, 2014

17                 M. James Lorenz

18                 United States District Court Judge

19 COPY TO:

20 HON. BARBARA L, MAJOR
   UNITED STATES MAGISTRATE JUDGE

22 ALL PARTIES/COUNSEL

13

12cv1430L